ALEX WOLDERT v. S. C. ARLEDGE.

No. 339.

1. **Completed Contract of Sale.**—In answer to a postal, inquiring prices for February and March delivery, was sent the following telegram: "February short clear bacon six cents, March seven five; all loose; f. o. b. Kansas City; margin half cent per pound. Quick reply if want any. Market booming." Reply: "Will take one car February and March bacon; forward contracts and draw for margin." If by the usage of trade in Kansas City a carload of bacon was a fixed quantity, then the telegrams constituted a contract of sale.

2. **Completed Contract.**— Whenever a distinct and definite proposal is made by one person to another, and the latter accepts the same absolutely and without qualification or condition, the minds of the parties meet and negotiations close, and the proposal and acceptance constitute a contract as soon as the acceptance has been deposited in the postoffice or the telegraph office, when the negotiations have been by mail or wire.

3. **Same.**—The words, "forward contracts and draw for margins," do not change the purport of the preceding words of the message. "will take one car February and March;" but without proof of the usage by which the number of pounds contained in a carload was fixed at 25,000, as alleged, correspondence can not be held to constitute a binding contract, because both the proposal and acceptance were indefinite as to quantity.

4. **Usage.**— Usage comprehends the habits, modes, and course of dealing which are generally observed in any particular branch of trade, or in all mercantile transactions, and must be established, known, certain, uniform, reasonable, and not contrary to law, and its object is to interpret the otherwise indeterminate intentions of the parties, and to fix and explain the meaning of words and expressions of doubtful or various senses.

5. **Evidence of Usage.**— Evidence tending to show the habit and custom of individuals engaged in business at Crockett, was immaterial and irrelevant, upon question of usage at Kansas City.

6. **Measure of Damages.**—If plaintiff is entitled to recover, the measure of damages is the difference between the contract price and the market value of the bacon in Kansas City at the time it was to be delivered to defendants, plus the cost of putting it on the cars for shipment; and the sale of the bacon in St. Louis is not evidence of its value in Kansas City.

7. **Tender of Goods Purchased.**— There was no necessity for a tender of the goods by the seller to the buyer, after the repeated refusals of the defendant to carry out the contract; but to entitle him to recover, the plaintiff must allege and prove the market value at Kansas City in the months of February and March, and his readiness, willingness, and ability to make the delivery in conformity with his contract.

ERROR from Houston.    Tried below before Hon. W. Q. REEVES.

*Nunn & Nunn*, for plaintiff in error.—1. The court erred in charge to the jury in submitting to them as an issue whether there was a contract between the parties; and in instructing them that if the parties contemplated that before the agreement between them, as expressed in the telegrams, should be regarded as binding, the terms of their contract should

be reduced to writing and signed and the margin put up, in such event the telegrams would only be negotiations and not a contract, therefore to find for defendant. Stuart & Co. v. Threadgill, 3 Willson's C. C., secs. 267–324; 3 Am. and Eng. Encycl. of Law, 356.

2. A custom of trade is a well established rule, universally recognized by those engaged in the business, and is not established by the habits, practices, or rules of individuals, known only to themselves and limited to their individual transactions and isolated community; nor is it necessary that it should be known to the parties to the transaction, for it will be binding upon them if it appear to be so general and well established that knowlege of it may be presumed. Kaufman v. Wootters, 67 Texas, 494; 1 W. & W. C. C., sec. 696; Neill v. Billingsley, 49 Texas, 161; 2 Greenl. on Ev., sec. 251.

3. The custom can only be proved by witnesses who have had frequent and actual experience of the custom or usage, and who do not speak from report alone. 2 Greenl., sec. 252.

4. Factors and purchasers from factors are equally bound by the customs and usages of any particular trade at the place where such trade is carried on, and are charged with knowledge of such custom or usage. Harbert v. Neill, 49 Texas, 158; Neill v. Billingsley, 49 Texas, 161.

*A. D. Aldrich* and *J. R. Burnett*, for defendant in error.—1. Under the pleadings and evidence, an issue of fact whether the telegrams constituted a completed contract or not, was properly submitted. The parties clearly contemplated the signing of a contract, and this fact, together with the evidence of custom relating to such sales, strongly tended to show that the parties did not intend the telegrams of themselves to amount to a completed agreement. Wald's Pollock on Con., 41; Lyman v. Robinson, 14 Allen, 242; Morrill v. Mining Co., 10 Nev., 125; Hough v. Brown, 19 N. Y., 111; Brown v. Railway, 44 N. Y., 79; Methudy v. Ross, 10 Mo. App., 101.

2. Plaintiff was clearly not entitled to recover. The alleged contract was made on November 13, 1890, for the delivery by plaintiff, f. o. b. at Kansas City, of a car of bacon in February and one in March, 1891, to be shipped to defendant at Crockett. This suit was filed September 18, 1891, for the difference between the contract price and the proceeds of the resale, on the ground that defendant had refused to accept the bacon. Plaintiff alleged, that defendant notified him that he would not receive the bacon, but plaintiff admitted that he "proposed for defendant to carry out his contract," notwithstanding such refusal; and it is clear that plaintiff did not elect to treat the refusal as a breach. If the contract was complete, and 25,000 pounds constituted a carload of bacon, as he contended, he had the right, on defendant's refusal, to rescind or to treat the contract as broken and sue at once for the breach. Younger v. Dalton, 83 Texas,

497; Crabtree v. Messersmith, 19 Iowa, 79; Holloway v. Griffith, 32 Iowa, 409; Fox v. Kitton, 19 Ill., 519; Chamber of Com. v. Sollitt, 43 Ill., 519; Follansbee v. Adams, 86 Ill., 13; Dugan v. Anderson, 36 Md., 567; Burtis v. Thompson, 42 N. Y., 246; Mountjoy v. Metzer, 12 Am. Law Reg., 442; 2 Benj. on Sales, sec. 1121; Frost v. Knight, 1 Moak's Eng. Rep., 218; Johnstone v. Milling, 38 Moak's Eng. Rep., 206.

PLEASANTS, ASSOCIATE JUSTICE.—The appellant brought suit against the appellee for damages on account of breach of contract. Plaintiff was engaged at Tyler, Texas, in the commission and brokerage business, and the defendant, S. C. Arledge, was a grocer at Crockett, Texas.

On the 10th of November, 1890, Arledge addressed Woldert a postal card, asking for prices of bacon for February and March delivery, and on same day Woldert, in reply to the postal, wired Arledge as follows: "February, short clear bacon, 6 cents; March, 7.5 cents; all loose; f. o. b. Kansas City; margin, ½ cent per pound. Quick reply if want any. Market booming." On the same day the telegram was confirmed by letter.

On the 13th of November, Arledge wired Woldert as follows: "Will take one car February and March bacon. Forward contracts and draw for margin."

On the 13th of November, Woldert wrote to Arledge in these words: "Your telegram of even date at hand, reading as follows: 'Will take one car February and March bacon. Forward contracts and draw for margin.' I have bought same to cover, and will make out and forward to you to-morrow, and draw for margins." Contracts were sent in accordance with the advice contained in the letter from Woldert, and also a draft for $250 to cover margins. The contracts stipulated for the purchase of 25,000 pounds of bacon by Arledge, to be delivered on board of train at Kansas City, free of charge, in February, and for the like quantity to be delivered in March, at same place and on same terms. Arledge refused to sign the contracts, and promptly returned the same, together with the draft unhonored; alleging as his reason for not signing, that he had agreed to buy two cars of bacon, and that a car of bacon was 20,000 pounds, and not 25,000 pounds. The plaintiff Woldert upon return of the contracts and the drafts sent contracts for the delivery of 40,000 pounds of bacon, 20,000 in February, and the like quantity in March, and drew for $200 instead of $250, but Arledge declined to honor the draft or to sign the contracts, and refused to have any further communication on the subject.

Bacon declined on the 13th of November, 1890, and continued to decline until after March. In the months of February and March, 1891, the plaintiff, Woldert, sold at public auction in St. Louis, Missouri, the 50,000 pounds of bacon, such as the defendant by his telegram of the 13th of November agreed to take, and afterwards brought his action to

recover of the defendant the difference between the amounts for which the bacon sold in February and March, and the prices at which it was offered to defendant in the month of November, and upon trial of the cause verdict and judgment were rendered for defendant.

The appellant complains of the charge of the court in several particulars.

If by the usage of the trade in Kansas City a car load of bacon is understood to be 25,000 pounds, then the telegram sent by Arledge to Woldert on the 13th of November, and Woldert's reply thereto of the same day, constituted a contract between the parties, and a breach of its terms by either would give the other the right to recover damages; and the court should not have instructed the jury, "that if the parties contemplated that before the agreement between them, as expressed in the telegram, should be regarded as binding upon them, the terms of their contract should be reduced to writing and signed by them, and the margin be put up, then the telegrams would not be more than negotiations for a contract, and would not constitute a contract or give plaintiff a cause of action."

Whenever a distinct and definite proposal is made by one person to another, and the latter accepts the same absolutely, and without qualification or condition, the minds of the parties meet and negotiations close, and the proposal and acceptance constitute a contract, mutually binding, as soon as the acceptance, when negotiations have been conducted by wire or through the mail, is deposited in the postoffice or the telegraph office for transmission to the person making the proposal. It sometimes occurs that when the parties have agreed, their correspondence shows that the agreement is not considered by them as final and binding until contracts referred to in the negotiations have been executed between them; but in this case, the court is of the opinion that the direction in the defendant's telegram of the 13th of November, to "forward contracts and draw for margins," does not modify or change the purport of the preceding words of the telegram, "will take one car February and March."

Usage comprehends the habits, modes, and course of dealing which are generally observed, either in any particular branch of trade, or in all mercantile transactions. A usage must be established, known, certain, and uniform and reasonable, and not contrary to law. The office of a usage is to interpret the otherwise indeterminate intentions of parties, and to fix and explain the meaning of words and expressions of doubtful or various senses. Usage must be proved by evidence of facts, not by mere speculative opinions; and by witnesses who have had frequent and actual experience of the usage, and who do not speak from report alone; and they must speak as to the course of the particular trade. 2 Greenl. on Ev., pars. 248, 251, 252. It has also been held, that the rules of the chamber of commerce, established for the purpose of maintaining uniformity in com-

mercial usages of the place, are admissible to show the existence or non-existence of a particular usage in that place.   Kershaw v. Wright, 115 Mass., 514.

A usage of trade in which all dealers in that line of trade are bound to take notice, must be known, must be uniform and certain.   In this case the plaintiff insisted, that by the usage of the trade a carload of bacon meant 25,000 pounds; while the defendant insisted that by usage a carload meant 20,000 pounds.   The court, under this state of case, should have submitted, under instructions in conformity with the law as outlined above, the issue of the existence or nonexistence of a usage obtaining among those engaged in the bacon trade at Kansas City, which fixed and determined the quantity of bacon contained in a carload; and if the jury found that such usage did exist, and that it determined the number of pounds of bacon, by the expression " a carload of bacon," to be 25,000, their verdict should have been for the plaintiff, if they further found from the evidence that the plaintiff was able and ready to deliver the bacon free of charge on the cars at Kansas City, at the times mentioned in the correspondence between the parties, for transmission to Crockett, Texas, on defendant's account.   And on the other hand, if the jury found that by the usage of the trade of that city, a carload of bacon meant 20,000 pounds, the verdict should have been for the defendant; and so, if the jury found that there was no established usage obtaining among those engaged in the bacon trade at Kansas City, by which the number of pounds contained in a carload was fixed and determined, the verdict should have been for the defendant.   If there be no usage determining the number of pounds of bacon intended by the expression " a carload," then the correspondence between the plaintiff and the defendant can not be held to constitute a contract binding between them; because both the proposal to purchase and the acceptance of the proposal were indefinite as to the quantity of the commodity which was the subject of their negotiations. If the usage fixed the number of pounds to a carload to be 20,000, the plaintiff should not recover, because he tendered for execution a contract different from the one created by the telegrams, and this gave the defendant the privilege of declining to make a purchase on any terms from the plaintiff.   The latter not having complied with the terms of defendant's proposal, he had the right to refuse to treat further with the plaintiff.   If, however, a usage exists which fixes the term " a carload " to mean any number of pounds between certain limits, and 25,000 pounds be within those limits, the plaintiff would be entitled to a recovery, if he was able and ready to deliver the bacon, at the place and at the time and on the terms proposed by him in his correspondence with the defendant. But no such issue as this was raised by the pleadings or the evidence.

The court did not err, as contended by appellant, in refusing to instruct the jury that the correspondence between the parties established a

contract binding upon them.  As we have seen, a usage must be shown to exist in the place where the contract is to be executed, and that place in this case is Kansas City.  Evidence, therefore, tending to show the habit and custom of individuals engaged in business at Crockett, in conducting that business at Crockett, was immaterial and irrelevant, and should not have been submitted to the jury.

The measure of damages, if plaintiff be entitled to recover, is the difference between the contract price and the market value of the bacon in Kansas City at the time it was to be delivered to defendant, plus the cost of putting it upon the cars for shipment.  3 Pars. on Con., 208; Welden v. Meat Co., 65 Texas, 487.  The sale of the bacon in St. Louis is not evidence of the value of the property in Kansas City.  The sale of the meat without notice to the defendant can not in any way affect him. When the vendor sues the vendee for breach of contract, he may elect, when there has been no delivery, to treat the property as his own, and sue immediately for the difference between the actual value of the property and the price to be paid; or he may consider the property as the vendee's, and sell it with due precaution, and after reasonable notice of his intention to sell given to the vendee; and may sue and recover the balance of the price, after giving credit for the amount received from the sale.  Or he may consider the property as the vendee's, subject to his· call or order, and then the vendor recovers the whole of the price which the vendee should pay.

But these rules apply only where the vendor himself has possession of the goods.  When he has contracted with a third party for the goods, then the vendor can recover only the difference between the market value and the contract price.  Pars. on Con., supra.  There was no necessity of a tender of the goods in this case after the repeated refusals of the defendant to carry out the contract which plaintiff insists was made by defendant's telegram of the 13th of November, and plaintiff's acceptance of the proposal contained in that telegram.  The bacon in question was never in the possession of the plaintiff, and he can recover only the difference between the market value of the bacon in Kansas City at the times the same should have been delivered to defendant, together with the cost of placing the meat on the cars for shipment, and the price for which plaintiff contracted to sell.  And to entitle him to recover, the plaintiff must allege and prove the market value at Kansas City in the months of February and March, and his readiness and willingness and ability to make delivery of the goods in conformity with the terms of his contract.

The petition seems to have been framed with the view to recover the difference between the price obtained upon the sale of the goods and the price for which he had contracted to sell them to defendant.  Plaintiff could not sell the goods as the property of the vendee, and bind him thereby, without having given him reasonable notice of plaintiff's pur-

pose to sell. Leonard v. Porter, 4 Willson's C. C., sec. 55, and authorities therein cited; Kempner v. Heidenheimer, 65 Texas, 591. This suit is for the recovery of damages for alleged breach of contract; and if there was in fact a contract, and a breach by the defendant, which can only be determined by another trial, plaintiff should not be refused recovery because he may have been mistaken in his measure of damages.

For the error in the charge, the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*

Delivered November 23, 1893.