## DALLAS COTTON MILLS v. HUGULEY.
### (No. 8534.)

(Court of Civil Appeals of Texas. Dallas. April 30, 1921.)

1. **Appeal and error** ⟜1067—**Refusal of instruction on matter not controverted not reversible error.**

Where the evidence was undisputed that certain brokers were the special agents of defendant to sell his cotton, the only issue being how long their authority continued, the court did not materially err in refusing to instruct, at plaintiff's request, that a person may constitute another his agent for the sale of goods by verbal authority.

2. **Appeal and error** ⟜731(1)—**General assignment of error not considered.**

An assignment of error that "the verdict of the jury is contrary to the law and the evidence, and therefore should have been rendered for plaintiff" (appellant), is too general to be considered.

3. **Appeal and error** ⟜197(1)—**Objection of variance cannot be first raised on appeal.**

Where the bill of exception taken to the admission of testimony does not show that its admission was objected to on the ground that there was no pleading authorizing it, such objection cannot be first raised on appeal.

4. **Customs and usages** ⟜15—**Office of usage is to explain contracts.**

The office of a usage is to interpret the otherwise indeterminate intentions of parties, to understand the nature and extent of their contracts, and to fix and explain the meaning of words and expressions of doubtful or various senses.

5. **Customs and usages** ⟜16—**Cannot add new terms by usage.**

When a contract is clear and complete, new terms cannot be added by usage.

6. **Customs and usages** ⟜17—**Custom as to time of closing contracts not objectionable as varying contract.**

Where contract under which broker was to sell cotton for defendant did not limit the time in which the sale was to be made, delivery

made of the cotton, and the transaction closed, evidence was admissible of a custom among cotton buyers that a trade for the purchase and sale of cotton shall be closed by 8 o'clock in the evening of the day when made, as such custom would not be inconsistent with or vary any term of the contract.

**7. Customs and usages ⚖=16—Admissible when contract is incomplete.**

Where a contract is not in itself a complete expression of the intention of the parties, valid and known usages, if not inconsistent with the express terms, are admissible to supply matters as to which the contract is silent.

Appeal from Dallas County Court; W. N. Coombes, Judge.

Action by the Dallas Cotton Mills against W. J. Huguley. From judgment for defendant, plaintiff appeals. Affirmed.

Coke & Coke and Thomas G. Murname, all of Dallas, for appellant.

Leake & Henry, of Dallas, for appellee.

TALBOT, J.   The appellant brought this suit against the appellee to recover the sum of $455, the difference in the market value of 26 bales of cotton and the purchase price thereof claimed to have been sold by the appellee to the appellant on or about October 18, 1919, at 36½ cents per pound, alleging that the appellee failed and refused to deliver the cotton, but, on the contrary, wrongfully sold the same to another party on October 30, 1919, at 40 cents per pound. The appellee pleaded a general demurrer, a general denial, and specially that he did not at any time make any such contract for the sale of cotton as is declared in the appellant's petition; that on or about the 18th day of October, 1919, the appellee had a conversation with a cotton broker in the city of Dallas, Tex., believed by the appellee to be acting for himself, but who later claimed to be acting for the appellant, in relation to the sale of certain bales of cotton owned by the appellee: that the effect of this conversation was that appellee would sell and deliver the cotton, or the compress receipts representing the same, if said broker would notify and advise appellee on that day, the day of said conversation, that the said broker wished to close the matter, and that upon receipt of notice to that effect appellee was to make delivery of the cotton on the same day and receive the price agreed to be paid therefor, and the entire transaction to be fully and in all respects to be completed and closed on that day or not at all; that said broker did not notify or advise the appellee on said day that he wished to purchase the cotton, and appellee heard nothing whatever from him on that day; that, notwithstanding said broker did not on the day of said conversation notify the appellee that he wished to purchase the said cotton, he did several days later urge appellee to deliver the cotton at the price which appellee agreed to sell the same for had it been purchased on the day the conversation referred to occurred; that, while appellee was not bound to make delivery at said later date, and so stated to said broker, still, on account of the insistence of said broker, the appellee finally stated that he would make delivery of the cotton at the same price notwithstanding there had been an increase in the market price; and at the instance of said broker appellee tendered delivery of the cotton and would have delivered same to the appellant if the appellant had paid for the same, but that the appellant failed to make such payment.

The case was submitted to a jury on special issues, which were resolved in favor of the appellee, and judgment rendered that the appellant take nothing by his suit, and that the appellee recover his costs. From this judgment the appellant perfected an appeal to this court.

The controlling question in the case, as presented by the pleadings and the evidence, was whether or not the time within which the brokers, Starr & Co., were to make and complete the sale of the cotton in question was limited to the 17th day of October, 1919, the day on which the conversation in reference to a sale thereof occurred. The appellant's theory and contention was and is that the brokers had authority from Huguley to make the sale without reference to the time in which the sale was consummated; whereas the theory and contention of appellee was and is that the sale should be made and closed on the 17th day of October, 1919, the day on which the conversation occurred, and that the brokers had no authority to sell the cotton at a later date. The testimony upon the issue was conflicting. Huguley testified that the sale was only authorized in the event it was made and he notified thereof on the day of the conversation, and the testimony of the witness Musgrove, who was acting in the negotiations as agent for Starr & Co., was to the contrary. The contention of the appellee was sustained by the findings of the jury, and their settlement of the question is binding upon this court. The testimony was without dispute that the conversation between the appellee, Huguley, and the representative of Starr & Co. in reference to a sale of the cotton occurred October 17, 1919, and that the alleged sale to the appellant, Dallas Cotton Mills, did not take place until October 18, 1919.   There is testimony that the brokers, Starr & Co., endeavored to notify the appellee of the alleged sale on October 18, 1919, but it appears without contradiction that the appellee did not actually receive notice of the alleged sale until October 20, 1919. The findings of the jury in response to special issue submitted were to the effect that the

appellee did not on the 18th day of October, 1919, through his agents, agree to sell to the appellant the 26 bales of cotton involved in the controversy; that the appellee had not ratified and approved by his subsequent acts and conduct any such sale; that the agreement between Starr & Co. and the appellee, W. J. Huguley, was to the effect that the sale of the cotton was to be made on condition that Starr & Co. notified appellee that the cotton would be purchased on the day of their conversation in reference to a sale thereof; and that the appellant, Dallas Cotton Mills, on the 24th day of October, 1919, refused to pay the appellee for the cotton when he (appellee) refused to deliver it to them on that date.

[1] The evidence was undisputed that Starr & Co. were the special agents of the appellee to make a sale of the cotton upon the conditions imposed by the appellee at the time they were authorized to make the sale; that is, that the sale should be made and closed, with notice thereof to appellee on the same day of the conversation between appellee and the representative of· Starr & Co., which was October 17, 1919; therefore the court did not materially err in refusing to instruct the jury, at the appellant's request, that a person may constitute another his agent for the sale of goods, wares, and merchandise by verbal authority. The proposition of law embodied in the charge was not involved or a matter of controversy in the case. The testimony was uncontradicted that Starr & Co. were the agents of the appellee, the question being, as pointed out by the appellee, the scope and extent of their agency, covering an isolated transaction, as determined by the conditions imposed by the appellee at the time· they were retained as his agents. It does not appear that there had been a general course of dealing between the appellee and said agents. So far as is disclosed by the record, this was the only dealing or transaction which appellee had ever had with Starr & Co. The cases cited in support of the appellant's contention that the court erred in refusing to give the charge in question are inapplicable, under the facts, and cannot be relied on to furnish authority for disturbing the court's action. It may be conceded that the special charges, the refusal of which is made the basis of the second and third assignments of error, state correct abstract propositions of law, but the facts did not call for the giving of such instructions and the assignments will be overruled. Unquestionably, had Starr & Co. closed the sale of the cotton on October 17, 1919, in accordance· with the authority given them by the appellee, the sale would have been a completed one and binding on the appellee. But, especially since, according to the findings of the jury, there was no such sale, and no ratification or approval of the sale claimed by the appellant to have been made, the refusal of the charges furnishes no ground for a reversal of the case.

[2] The fourth assignment of error is that "the verdict of the jury is contrary to the law and the evidence, and therefore should have been rendered for plaintiff." The decisions are practically uniform that this assignment is entirely too general to be considered. But, if we were disposed to consider the assignment, we are not prepared to say from our examination of the evidence that the several findings of the jury upon the issues submitted are not supported by the evidence.

[3] The fifth and last assignment of error complains of the admission of testimony over the objection of the appellant that there was a custom of the trade in the cotton business requiring contracts of the nature sued on to be closed in one day. The proposition is as follows:

"Proof of custom of trade cannot be introduced in suit upon a specific contract, unless raised by the pleadings, to vary the plain unambiguous terms of the contract sued upon, and such evidence was irrelevant and remote."

[4, 5] The bill of exception taken to the. admission of the testimony does not show that its admission was objected to on the ground that there was no pleading authorizing it, and that question cannot now be raised; and we do not think it should be held under the circumstances of this case that the testimony was inadmissible. on the ground that it was "irrelevant and remote." As has been pointed out, the theory of the appellant is that the brokers were authorized to make sale of the cotton without reference to the time in which the sale was consummated; whereas the theory of the appellee is that the brokers were authorized to sell only in the event the sale was made and closed on the day authority was given to make it. The office of the usage is to interpret the otherwise indeterminate intentions of parties, to understand the nature and extent of their contracts, and to fix and explain the meaning of words and expressions of doubtful or various senses. 2 Green. Ev. §§ 248, 251, 252; Woldert v. Arledge, 4 Tex. Civ. App. 692, 23 S. W. 1052. And so "evidence of usage is allowed not only to explain, but to add, tacitly implied incidents to the contract in addition to those which are actually expressed." 12 Cyc. p. 1082. But, of course, when a contract is clear and complete, new terms cannot be added by usage.

[6, 7] According to testimony of the witness Musgrove there was no limitation put upon the time in which the sale was to be made, delivery made of the cotton, and the transaction closed. In. view of this testimony, notwithstanding the appellee testified to the contrary, we think it was competent for the appellee to show when, according to the custom prevailing among cotton buyers, a trade for the sale and purchase of cotton

shall be closed. The question eliciting the testimony objected to was as follows:

"What is the established and universal custom amongst cotton buyers, if there is any, in regard to the question of when a man buys cotton from another and nothing is expressly said about the time that that trade is to be closed; what time is the universal accepted custom of the cotton business as to when that trade shall be closed?"

Over the objections of the appellant as stated in the above-quoted proposition, the witness was permitted to answer thus:

"Well, on the day's business it usually runs until about 8 o'clock at night. That is the common custom. If the trade is not closed by either party by 8 o'clock of the day on which the trade is made, then neither party is to be bound by the contract without there is a specified time."

If, as testified by the appellant's witness, the time when the sale of the cotton in question was to be made and the transaction closed was not specified or agreed upon, the custom shown would not be inconsistent with or vary the terms of the contract upon which the suit is based, and hence the rule that, "where a contract is not in itself a complete expression of the intention of the parties, valid and known usages, if not inconsistent with the express terms, are admissible to supply matters as to which the contract is silent," is applicable. 17 Corpus Juris, § 63, p. 499. Applications of the rule have been made to determine the time of delivery of goods sold, the time and place of payment under a contract of sale sound in that regard, etc.

Believing no reversible error is pointed out, the judgment of the court below is affirmed.