ARMSTRONG v. WILLOUGHBY.   (No. 6559.)

(Court of Civil Appeals of Texas. Austin. April 4, 1923. Rehearing Denied May 16, 1923.)

1. Sales ⟨key⟩153—Tender by seller unnecessary, where buyer has rejected contract.

Where plaintiff was obligated by contract to deliver certain calves, and notified the defendant in writing that he was ready and would make timely delivery at the place designated by the buyer, and the buyer telegraphed that it was utterly impossible for him to take the cattle, the seller was relieved from the necessity of driving the cattle to the place of delivery and making actual tender there.

2. Sales ⟨key⟩71(4)—Seller's inability to deliver full estimated quantity of certain described cattle not ground for buyer's rescission.

Under a contract requiring the seller to deliver all of certain calves raised by him and received by him under his contract with designated persons, the number of which was estimated at about 2,300 head, held, that the seller was not required to deliver or tender 2,300 head, but was only required to deliver all of the cattle of the kind, age, and description specified by the contract, and the fact that at the time the seller tendered delivery he had only 1,700 head could not be urged as excuse for buyer's repudiation of contract.

3. Sales ⟨key⟩153—Tender of some cattle other than those contracted for does not make tender bad.

Where the seller, under a contract for the sale of certain described cattle, purchased other cattle in order to make up the quantity to conform to the estimate of the contract, the fact that the buyer was not under obligation to accept such other cattle did not make the tender bad, or relieve the buyer of the obligation to accept so much of the herd as conformed to the contract.

4. Sales ⟨key⟩181(11)—Evidence held to require finding for seller for rescission of contract by buyer.

In an action by the seller for damages by reason of the purchaser's repudiation of the

contract for the purchase of cattle, evidence *held* to warrant a finding that the buyer's refusal to accept the cattle tendered was by reason of the decline in price subsequent to the contract of purchase.

Appeal from District Court, Tom Green County.

Action by Paul Willoughby against C. M. Armstrong. Judgment for plaintiff, and defendant appeals. Affirmed.

G. E. Lockhart, of Tahoka, for appellant. Hill & Hill, of San Angelo, for appellee.

### Findings of Fact.

JENKINS, J. On the 31st day of January, 1920, appellant and appellee entered into a written contract for the sale of certain cattle by appellee to appellant, described as "all of the heifer and steer calves raised by appellee from what was known as the Evans cattle, born during the year 1920 and prior to June 1, 1920, and also all the calves that should be received by appellee from Allison and Wyatt, on or about November 1, 1920, which were born during that year prior to June 1st thereof. Appellee owned the Evans cattle. He had some years previous to 1920 sold a ranch to Allison and Wyatt, agreeing to receive from Allison and Wyatt all of the calves raised by them on their ranch, born each year between January 1st and June 1st, the same to be delivered to appellee on or about November 1st of each year.

In the contract between appellee and appellant, it was stated that the number of cattle to be delivered was estimated at about 2,300 head. This estimate was made on the basis of about 450 cows of the Evans cattle owned by appellee, and the further fact that Allison and Wyatt had notified appellee that they would deliver to him, on or before November 1, 1920, about 1,950 head of the calves of the 1920 crop. These facts were known to both appellant and appellee at the time said contract was entered into, and the estimate was made on this basis. The cattle mentioned in the contract were to be delivered by appellee to appellant at San Angelo, Tex., not later than May 1, 1921. Appellant was to have a "cut back" of 10 per cent. of said calves.

Allison and Wyatt delivered to appellee, on or about November 1, 1920, only about 1,481 head, instead of 1,950; the calf crop being short that year. Appellee had sold his crop of calves to appellant the year previous, and was not able to deliver the full number estimated. To make up such number he bought calves from Ed. Willoughby, which the appellant, with full knowledge of that fact, received on his contract. However, there were still 10 head short, for which appellant insisted that he should re-ceive a profit of $2 per head, to which he is entitled by reason of the increased value of cattle, and which amount appellee paid.

Anticipating that appellant would desire that there should be delivered to him approximately 2,300 head of calves, with a cut back of 10 per cent., appellee, in about November, 1920, purchased from Ed. Willoughby about 431 head of calves, and marked and branded them, and turned them into his pasture with his calves. The Ed. Willoughby calves were all the same age as called for in the contract between appellant and appellee, and were of a superior grade to appellee's calves, or to the Allison and Wyatt calves. The price which appellant agreed to pay appellee, upon delivery of the calves at San Angelo, was $40 per head.

In the spring of 1921, cattle declined in price, and at the time when the delivery should have been made, May 1, 1921, the steer yearlings called for in the contract were worth at San Angelo only $25 per head, and the heifer calves only $20. In March or April, 1921, appellant visited appellee's ranch, at which time appellee notified appellant that he expected to be able to deliver about 2,000 head under the contract. This included the Ed. Willoughby calves. Appellant at that time notified appellee that it would be very difficult for him to raise the money to make the payment. Appellee then suggested to appellant that, if he did not have a sufficient amount of cash to make the payment, he would sell to him on credit, if he would furnish sufficient collateral.

On April 14, 1921, appellee, not having heard from appellant since his visit to appellee's ranch, wrote appellant, at Seminole, Tex., his place of residence, that he would, in compliance with said contract, have said cattle at the stock pens of the K. C., M. & O. Railway Company, in San Angelo, or at any other place in said city appellant might designate, not later than May 21, 1921, ready to deliver to appellant and that unless he heard from him by April 20, 1921, he would, on that date, begin gathering said cattle for delivery. The cattle were, as was known to appellant, on two ranches of appellee, situated, respectively, about 25 and 40 miles south of San Angelo. To have delivered the cattle at San Angelo would have required some time in gathering them and driving them to San Angelo. Appellee, under the contract, was entitled to a cut back of 10 per cent., and under the usages of trade between stockmen he should have come to appellee's ranches and made his cut back there, so that the rejected cattle would not have to be driven to San Angelo and back again.

In reply to the letter above referred to, appellee received the following telegram:

"Seminole, Texas, 4:17, April 19, 1921. "Paul Willoughby, San Angelo, Texas. Utterly impossible for me to take cattle May 1st. "[Signed] C. M. Armstrong."

After receiving this telegram, appellee did nothing more with reference to delivering the cattel at San Angelo. Appellant was not at San Angelo on May 1st, nor at any time prior thereto to receive the cattle. Appellee brought this suit, alleging that he had in his pastures ready for delivery at San Angelo all of the calves of the Evans cattle, and all of the calves that had been delivered to him by Allison and Wyatt, numbering 1,770 head, or 1,593 head of said calves, exclusive of the 10 per cent. cut back. Approximately one-half of these calves were steers and one-half heifers.

This suit was brought for the difference between the contract price and the market price of said calves at San Angelo, at the time they should have been delivered, which amounted to $23,377.50, and judgment was rendered for appellee for that amount, with 6 per cent. interest from May 1, 1921.

## Opinion.

[1] Appellant contends that appellee first breached the contract by failing to tender the cattle at San Angelo, on or before May 1, 1921. The issue thus presented under the pleadings and the evidence, is: Did the telegram referred to in the statement of facts relieve the appellee from the necessity of driving the cattle to San Angelo, and there making an actual tender? We hold that it did. We quote upon this issue from 35 Cyc. 171, as follows:

"No tender is necessary when the contract has been definitely rejected by the buyer, as by refusal to accept · delivery if tendered, or notice to the seller that the buyer is unable to accept and pay for the goods."

To the same effect is 23 R. C. L. 1416. In Woldert v. Arledge, 4 Tex. Civ. App. 692, 23 S. W. 1052, it is held that, where there has been a refusal to accept, the vendor may treat the property as his own, and sue immediately for the difference between the contract price and the market price. The telegram above referred to was, in effect, a positive statement by appellant that he would not receive the cattle at the time and place designated in the contract. The law relieves a party bound to make payment from an actual tender, where the other party states that he will not accept the payment, for the reason that it would be an idle thing to require a party to take the money out of his pocket and count it out, when the party to receive the same had stated that he would not do so. There is much stronger reason in the instant case why appellee should be relieved from the necessity of gathering the cattle on his ranches, 25 or 40 miles from San Angelo, and driving them to that place, after he had been notified that appellant would not receive them. This would not only have been a vain thing, but would have involved considerable labor and expense on the part of appellee, which would have been useless and of no benefit to appellant.

Appellant submits the additional proposition that, even though appellee might have been relieved from making an actual tender of the cattle at San Angelo, if he had been ready, willing, and able to make such delivery, the refusal of appellant to accept the cattle did not relieve him from making the tender, for the reason that he was not able to; that is to say, he did not have about 2,300 head of the cattle designated in the contract, but only 1,770 head of same; and that appellant was not obliged under the contract to accept a number of such cattle materially less than called for in the contract.

[2] Appellee did not contract to deliver about 2,300 head of cattle designated in the contract as the Evans and Allison and Wyatt cattle. His contract was to deliver all of the calves of that season, of the age mentioned. This he was ready and able to perform, and offered so to do, and would have done so, but for appellant's refusal to accept the same. The 2,300 head mentioned in the contract was only an estimate, based upon facts known to both parties, and concurred in by both parties, without any fraud, concealment, or misrepresentation on the part of appellee. We held that under the contract appellant was bound to receive the .cattle tendered him, the same being all of the cattle mentioned in the contract, though of a less number than estimated by the parties.

[3] Appellant further contends that the tender on the part of appellee was not of the 1,770 head, but of about 2,000 head, including the 430 head of the Ed. Willoughby cattle, and that he was not under any obligation to accept the Ed. Willoughby cattle, even though they were of a superior grade to the cattle mentioned in the contract. Appellant cites in support of his proposition Dunovant v. Anderson, 24 Tex. Civ. App. 517, 59 S. W. 824. That case announces that, where a specific article has been sold, a tender of a different article will not relieve the vendor from a breach of his contract, though the article tendered is of equal or superior grade to that sold. This is a correct proposition of law, but not applicable to the facts of this case, because, while appellee contemplated tendering to appellant the 430 head of the Ed. Willoughby cattle, he also contemplated tendering all the Evans and Allison and Wyatt cattle, as mentioned in the contract, and appellant, had he been at San Angelo for the purpose of receiving the cattle, might have rejected the Ed. Willoughby cattle, not-

withstanding they were of a superior grade to those mentioned in the contract. The evidence shows that the Ed. Willoughby cattle could easily have been identified and separated from the others. Appellee did not in this suit claim damages by reason of appellant's refusal to accept and pay for the Ed. Willoughby cattle. The purchase of the Ed. Willoughby cattle, in the fall of 1920, with the view of tendering them to appellant, was not in any sense fraudulent on the part of appellee, but only with a view of enabling him to deliver the full number of cattle estimated in the contract; for, as the record shows, the cattle had not declined in price at the time appellee bought the Ed. Willoughby cattle, and had there been no decline up to May, 1921, presumably the appellant would not have objected to taking the Ed. Willoughby cattle.

The proposition in Deel v. Berry, 21 Tex. 466, 73 Am. Dec. 236, cited by appellant, to the effect that the seller must take the initiative and tender the article sold in order to relieve himself from default, is not applicable to the instant case, for the reason that the refusal on the part of appellant to accept the cattle relieved appellee from making such tender. Neither is the case of Ross v. Anderson, 1 White & W. Civ. Cas. Ct. App. § 1033, applicable to the facts of this case, for the reason that the defendant there sought relief from his obligation to pay, by reason of the fact that he had tendered payment of the corn which he was required to deliver, and that such tender had been refused. The seller, however, retained the corn and sold it, and it was properly held that such tender did not amount to a satisfaction of the debt.

Had appellee driven all of the cattle, including the Ed. Willoughby cattle, to San Angelo, and there made tender of same to appellant, it would have been a tender of more cattle than appellant had contracted to purchase—that is to say, there would have been about 2,000 head, and of these only 1,770 head would have been the cattle that appellant had contracted to purchase. In Mason v. Slaughter (Tex. Civ. App.) 195 S. W. 900, it was held that it was no defense on the part of the purchaser that the seller had tendered more cotton seed than the purchaser had agreed to receive; the court stating that the purchaser could have accepted the amount bought and rejected the remainder.

[4] It is argued by appellant that he was induced to send the telegram above referred to by the fact that he had been notified by appellee that the number of cattle which he proposed to deliver was about 2,000, and that he was not able to receive and pay for that number, but that, if he had known that there was only 1,770 head, he could and would have accepted the same. Clear-ly appellant's reason for sending the telegram was that the cattle had declined in price, and that he was either unable or unwilling to accept and pay for the same on that account. If he had desired to receive the cattle, the fact that he had anticipated that 2,000 would be tendered to him, instead of 1,770, need not have prevented him from accepting the cattle, for the reason that appellee offered to sell him the cattle, in whole or in part, on credit, if he would furnish acceptable collateral. Whatever force there might have been in the argument last referred to on the part of appellant, it is destroyed by the fact that he did not take the stand and testify in this case that he would have received the 1,770 head of cattle, less the 10 per cent. cut back, if he had known that was the number to be tendered, or that he was able to finance the transaction and pay for that number, or any other number.

The trial court was fully justified from the evidence in this case in concluding that the fact that appellee was able to tender only 1,770 head of cattle, instead of the estimated number of about 2,300, or the number estimated by appellee in March or April of 2,000, did not in any wise influence appellant in refusing to accept the cattle, but that he did so solely for the reason that there had been a decline of about 50 per cent. in the price of cattle between the date of the contract and the date fixed for delivery. Had appellant been informed that only 1,770 head of cattle, with a 10 per cent. cut back, would be tendered on the contract, and had he accepted and paid for this number, the price fixed in the contract, he would have been loser in the transaction the amount of the judgment against him in this case.

Finding no error of record, the judgment of the trial court is affirmed.

Affirmed.