CAVINESS PACKING COMPANY, INC. and Ed Barrett, Appellants,

v.

R. H. "Bob" CORBETT and D. F. Allen, Appellees.

No. 9008.

Court of Civil Appeals of Texas, Amarillo.

Aug. 31, 1979.

Rehearing Denied Oct. 3, 1979.

Witherspoon, Aikin & Langley, Earnest L. Langley, Hereford, Tex., for appellants.

Hunter & Blackwell, William A. Hunter, Dalhart, Charles D. Alsup, Clayton, N. M., for appellees.

COUNTISS, Justice.

Caviness Packing Company, Inc. and Ed Barrett appeal an adverse judgment denying them recovery against R. H. "Bob" Corbett and D. F. Allen for an alleged breach of a written contract for the sale of cattle. The question before the court is whether parol evidence which Caviness and Barrett tendered to support their interpretation of the contract was admissible. The trial court excluded from jury consideration a substantial amount of the evidence Caviness and Barrett tendered, and when they rested, instructed a verdict in favor of Corbett and Allen. We affirm the judgment of the trial court.

The W S Ranch, located near Vermejo Park, New Mexico, is a 480,000 acre ranch devoted primarily to the raising of cattle and to the granting of hunting and fishing concessions. In recent years the ranch has maintained a herd of several thousand commercial cows of predominantly Hereford breed, with some Charolais and Charolais crossbreeds. The ranch contracts the steer calves in the spring of the year for delivery to the buyer in the fall.

Caviness had purchased the steer calf crop from the ranch for several years and, in the spring of 1976, did so again, contracting to pay the ranch $50 per hundred weight for the calves based on their weight at the time of fall delivery. Caviness then entered into an agreement with Barrett, whereby Barrett acquired a one-half interest in the calves.

Shortly after Caviness had contracted for the cattle, Corbett contacted Pete Caviness, president of the appellant company, and entered into discussions concerning the purchase of the calves from Caviness and Barrett. Those discussions culminated in a written contract signed by Corbett, Allen and Caviness' Vice-President, Brent Caviness. That contract is the foundation for this suit, and the portions pertinent to the case read as follows:

## LIVESTOCK CONTRACT

THIS CONTRACT made this 26 day of May 1976, by and between CAVINESS PACKING CO INC of HEREFORD TX, hereinafter known as SELLER, and BOB CORBETT & FRANK ALLEN of _____ hereinafter known as BUYER, covers the sale of the following described livestock, for the consideration of the sum of $35,-000.00, part payment the receipt of which is hereby acknowledged by the SELLER. balance of purchase price to be paid upon completion of contract.

| NUMBER | DESCRIPTION | BRANDED | PRICE |
| --- | --- | --- | --- |
| 1750 | HEREFORD & CHARCROSS | W S | .52/CWT |
| | STEERS | | |
| | | | |
| | WEIGH APPROX | | |
| | 300 # to 325 # | | |

These STEERS are now located on VERMEJO PARK and are to remain on SAME until delivered. Delivery to be made on or before THRU OCT. 1976 at the ~~buyer's option~~ at VERMEJO PARK F. O. B. ~~cars~~ TRUCKS, and to be weighed as follows: GATHERED EARLY A.M. SHRINK 3% * * *.

Subsequently, in September of 1976, Corbett received information that the calves had already reached a weight of three hundred pounds and would be considerably heavier by the delivery date. Discussions between Corbett and Pete Caviness ensued, and those discussions culminated with Corbett's advice to Caviness that Corbett and Allen would not take delivery of the cattle because by the time of delivery, they would be much heavier than specified in the contract.

Caviness and Barrett subsequently took delivery of the calves from the ranch in early November, disposed of them at a price less than that agreed to by Corbett and Allen and brought this suit for the difference.[1] When Caviness and Barrett took delivery, the average weight of the calves was 424 pounds.

In the trial court the parties agreed that the contract price was $52 per hundred weight, not 52 cents per hundred weight as stated in the contract. Also, evidence introduced by Caviness and Barrett without objection established that the phrase "weigh approximately 300 # to 325 #" meant that the cattle would weigh approximately 300 to 325 pounds at the time of delivery. A determination of the legal effect of that phrase in the contract will resolve the question before the court. Caviness and Barrett bring forward several points of error, all supportive of their basic contention that the weight provision is essentially immaterial. The thrust of their argument is that they contracted to buy from the ranch, and Corbett and Allen contracted to buy from them, all of the 1976 spring steer calf crop produced by the ranch regardless of size, weight or actual number; i. e., a purchase of the lot, not a purchase of individual cattle. Evidence in support of Caviness' and Barrett's theory was excluded by the trial court on the ground that it tended to vary or contradict the terms of the contract.

The use of parol evidence in connection with the interpretation of a written contract is governed by a series of well-settled rules that are easy to recite but often difficult to apply. The fundamental principle, generally called the Parol Evidence Rule, states that the establishment of the existence of a writing intended as a completed memorial of a legal transaction denies efficacy to any prior or contemporary expressions of the parties relating to the same subject matter as that to which the written memorial relates. 2 C. McCormick & R. Ray, Texas Evidence § 1601 (2d ed. 1956). As stated in *Paxton v. Spencer*, 503 S.W.2d 637, 642–643 (Tex.Civ.App.—Corpus Christi 1973, no writ):

> [P]rior negotiations of parties to a written contract, complete in itself and unambiguous, are merged in the writing, in the

1. After the contract in question was negotiated, cattle prices declined substantially, and the contract price with Corbett and Allen was 15 percent to 20 percent higher than the market price when the calves were ultimately received by Caviness and Barrett.

absence of evidence to show fraud, accident or mistake in their omission from the written contract. In that case, extrinsic evidence, parol or otherwise, will not be received in evidence, if its effect is to vary, add to, or contradict the terms of the written instrument. In particular, the extrinsic evidence rule ordinarily requires the exclusion of parol evidence of prior negotiations, representations, or statements that would add to, vary, or contradict the term of written contracts that are clear on their face. See 23 Tex. Jur.2d, Evidence, § 342, pp. 500–504, and the cases there cited. In the absence of fraud, accident or mistake, the intent of the parties to a written instrument that is clear and unambiguous on its face must ordinarily be ascertained from the instrument alone without the aid of extrinsic evidence. *Anderson & Kerr Drilling Co. v. Bruhlmeyer*, 134 Tex. 574, 136 S.W.2d 800 (1940); *Cutrer v. Cutrer*, 334 S.W.2d 599 (Tex.Civ.App.—San Antonio 1960, aff'd. 162 Tex. 166, 345 S.W.2d 513).

■ It is also well settled that, absent an ambiguity, construction of a written instrument is a question of law for the court. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968).

■ The various rules applicable to the field of law under consideration are set out in detail with extensive citation of authority in *Ross & Sensibaugh v. McLelland*, 262 S.W.2d 205, 208–209 (Tex.Civ.App.—Fort Worth 1953, writ ref'd n. r. e.). In addition to the principles already stated, it is important to remember that parol evidence is not admissible to show that the terms of the contract do not agree with the previous understanding of the parties. Additionally, and of importance in this case, even when the contract is ambiguous, and parol evidence is therefore admissible to explain the ambiguity, such evidence is not competent

to vary the terms of the contract or contradict the legal effect of its unambiguous provisions. *Ross & Sensibaugh v. McLelland, supra.*

Application of the foregoing rules to the contract before the court demonstrates the correctness of the trial court's rulings. The portions of the contract pertinent to this controversy are partially unambiguous, partially ambiguous and partially erroneous.

The unambiguous portion states that Caviness is selling to Corbett and Allen 1750 Hereford & Charcross steers which are branded W S.

The term "weigh approximately 300 # to 325 #" is ambiguous, but undisputed evidence introduced by Caviness and Barrett without objection explained that the term meant the animals were to weigh 300 to 325 pounds at delivery.

The term .52/CWT is patently erroneous [2] and the parties mutually agreed that the price was 52 cents a pound or $52 per hundred weight.

■ Thus, with ambiguities clarified and errors corrected, Caviness contracted to sell and Corbett and Allen contracted to buy 1750 Hereford and Charcross steers, weighing approximately 300 to 325 pounds at delivery, branded W S, for a price of $52 per hundred weight. We regard each provision as an operative part of the contract, and we cannot enforce part of the contract and ignore the balance. Corbett and Allen correctly anticipated Caviness' and Barrett's inability to deliver the steers at a weight of approximately 300 to 325 pounds [3], and were justified in refusing to accept delivery. The size of the animal was specified in the contract, and the weight provision is an essential part of the contract.

2. Doubtless this litigation would never have arisen if Caviness had intended to sell a 424 pound for $2.20.

3. The use of the term "approximately" in specifying the weights gives some latitude in that the animals could weigh slightly more or less than 300 to 325 pounds, but a difference of 100 pounds in a steer of the size in question exceeds the permissible ambient of the approximation. *See Norton v. Menard Lumber Company*, 523 S.W.2d 791, 793 (Tex.Civ.App.—San Antonio 1975, no writ); *Johnsrud v. Lind*, 219 N.W.2d 181, 189–190 (N.D.1974).

It is important to remember the role extrinsic evidence plays in the contract before us. As stated above, extrinsic evidence is inadmissible if it adds to, contradicts or varies the terms that are unambiguous. Competent extrinsic evidence is admissible to establish the meaning of the ambiguous weight provision and to correct the erroneous price provision. Once the correct terms are established, however, the meaning of the those terms is a question of law for the court and it is, therefore, not proper to receive additional extrinsic evidence for the sole purpose of eliminating one of the terms.

Caviness and Barrett seek to eliminate the weight provision from the contract by advancing the interpretative rules applied to contracts for sale of a specific lot or group identified by reference to independent circumstances, as exemplified by *Brawley v. United States*, 96 U.S. 168, 171–172, 24 L.Ed. 622 (1877) and *Armstrong v. Willoughby*, 251 S.W. 346 (Tex.Civ.App.—Austin 1923, writ dism'd). An examination of the cases supporting Caviness' and Barrett's theory, however, reveals that specific language in each of the contracts in the cases cited by Caviness and Barrett made reference to a sale by lot or group and tied operative portions of the contract to some other outside reference point. In those cases, parol evidence was correctly admitted to establish the facts needed in order to interpret the clause in question. The contract we are presented with simply does not contain the language required to bring it within the rule of the cases advanced. The undisputed evidence in this case illustrates the critical importance of the language used. Caviness contracted with the W S Ranch to purchase its 1976 steer crop at $50 per hundred weight. That was a purchase by lot or group of the kind illustrated by the cases advanced, and Caviness was obligated to take the 1976 steer crop, regardless of weight or number, at the agreed price. Had Caviness and Barrett made the same kind of agreement with Corbett and Allen, the cases they rely on would be applicable, necessitating a contrary holding. Our concern is with the contract before us, however, and the evidence tendered by Caviness and Barrett in the trial court has no purpose other than to change the contract that was signed by eliminating one of its terms, i. e., the weight provision.

The evidence was properly excluded by the trial court.

The judgment of the trial court is affirmed.